■ In the Matter of JULIA SMITH et al., Appellants-Respondents, v BOARD OF EDUCATION OF THE EAST RAMAPO CENTRAL SCHOOL DISTRICT et al., Respondents-Appellants. — In a proceeding pursuant to CPLR article 78, to, *inter*

*alia,* compel the Board of Education of the East Ramapo Central School District to re-establish the position of library media specialist, the cross appeals are from so much of a judgment of the Supreme Court, Rockland County (Skahen, J.), dated November 4, 1981, as (1) found "that within the meaning of Education Law § 2510 (1), Library Media Specialist and Civil Service Librarian II are not similar", (2) denied a motion to dismiss the petition for failure to file notices of claim, and (3) retained jurisdiction in the court "with respect to those motions which remain before it as well as any other disputes which now exist or which may arise under the terms of this judgment". Judgment affirmed insofar as appealed from, without costs or disbursements. Petitioners constitute two groups of certified teachers employed by the board of education during the 1975-1976 school year. Roughly half held the position of library media specialist; the remainder were classroom teachers. At the end of the 1975-1976 school year, the board of education, as an economy measure, abolished the position of library media specialists in certain schools and created the civil service position of librarian II. A librarian II, who receives approximately one half the salary of a library media specialist need not be a certified teacher and cannot be required to render teaching services, as were the library media specialists. The incumbent library media specialists were able, under the tenure system, to transfer to other teaching positions. Their transfer resulted in the "bumping" of less senior teachers from their posts. The latter joined with the former library media specialists in bringing this proceeding. Petitioners contend that the board of education acted in violation of the New York Education Law in replacing the library media specialists because the duties and responsibilities of a librarian II are similar to those of a library media specialist. They also maintain that prior decisions in two other proceedings dealing with the abolition of library media specialists, in which the Public Employment Relations Board (PERB) and an arbitrator each held that the positions of library media specialist and librarian II were identical, constitute *res judicata* and collateral estoppel on the issue. The pertinent statute, subdivision 1 of section 2510 of the Education Law, provides: "If the board of education abolishes an office or position and creates another office or position for the performance of duties similar to those performed in the office or position abolished, the person filling such office or position at the time of its abolishment shall be appointed to the office or position thus created without reduction in salary or increment, provided the record of such person has been one of faithful, competent service in the office or position he has filled". Thus, the issue presented was whether the positions of librarian media specialist and librarian II are "similar" within the meaning of subdivision 1 of section 2510 of the Education Law. After a hearing which produced over 2,700 pages of testimony, the court found that although the two positions were similar "in the ordinary sense of the word" in that they shared a large percentage of like duties, they were not similar within the meaning of subdivision 1 of section 2510. The similarities, as noted by the court, included such duties as ordering books and equipment, instructing pupils who came to the library in library skills, both individually and in groups, and conducting story hours. The differences in the two positions stemmed from the crucial fact that a librarian II is not a certified teacher and, therefore, cannot be assigned to classrooms to instruct, develop curriculum, prepare lesson plans, or do any of the other duties which the library media specialists, as certified teachers, could be required to do. As the court correctly noted, case law holds that the amount of time spent in similar duties should not be the controlling factor in determining the meaning of the term "similar". Rather, the emphasis is placed on the fact that the main difference between a position requiring a teaching certificate and a civil service position is the responsibility for teaching duties

attached to the former (see *Matter of Bork v City School Dist.,* 60 AD2d 13, mot for lv to app den 44 NY2d 647; *Matter of Bruso v Board of Educ.,* Supreme Ct, Rockland County, Oct. 1, 1976, affd on opn at Special Term, 60 AD2d 651, mot for lv to app den 44 NY2d 930; *Matter of Mills v Nyquist,* 63 AD2d 1060, affd 47 NY2d 809). In both *Bork* (*supra*) and *Bruso* (*supra*), the court confronted the issue of whether the duties of the abolished position of school nurse teacher were "similar" to those of the newly created position of registered nurse, within the meaning of subdivision 1 of section 2510. In both cases, it was determined that since the registered nurse's position did not require teaching certification and entailed no teaching responsibilities, the two positions were not similar. In *Mills* (63 AD2d 1060, 1061, *supra*), the court held that the positions of dental hygienist and dental hygiene teacher were not similar because the duties of dental hygienist did not include classroom teaching. The requirement of a teaching certification, the court noted, was the important difference between the two positions. Petitioners claim that the above cases are distinguishable because of the complete absence of teaching duties on the part of the school nurse and dental hygienist, contrasted with the instructional nature of the duties of a librarian. Special Term, while acknowledging the fact that a librarian II's duties include some that are instructional, found the distinguishing factor to be "the *responsibility to teach* that rests on the [librarian media specialist] but not the Lib[rarian] II" (emphasis added). The librarian media specialist position is a pedagogical one, requiring a teaching certificate and the rights of holders of that position are governed by the Education Law. The librarian II position, on the other hand, is a nonpedagogical one; no teaching certificate is required, and the rights of its holders are governed by the Civil Service Law. Special Term found this distinction to be determinative of the issue, and we agree. The question of collateral estoppel was also correctly determined by Special Term, which found that the prior decisions by the PERB and the arbitrator did not constitute *res judicata* or collateral estoppel because the criteria used to define "similar" were different in these other proceedings. The arbitration involved the interpretation and application of the collective bargaining agreement. There were two issues before the grievance arbitrator: (1) whether the parties' dispute was subject to arbitration under the collective bargaining agreement and (2) whether the assignment of the duties of library media specialist to librarian II violated specific provisions of the parties' collective bargaining agreement, such as those pertaining to salary and recognition. The PERB proceeding involved the question of whether respondents' unilateral actions in abolishing librarian media specialist positions and assigning those duties to librarian II positions was an improper employer practice in violation of section 209-a (subd 1, par [d]) of the Civil Service Law. Although both the arbitrator and the hearing officer had to address the issue of "similarity" of the two positions, it was not necessary for them to decide the issue of whether a civil service librarian II performed teaching duties. Since this teaching requirement is the determinative factor on the issue of similarity under subdivision 1 of section 2510 of the Education Law, the court properly refused to give these prior decisions collateral estoppel effect. In fact, the arbitrator acknowledged the lack of identity of the issues in the subject proceeding and the arbitration proceeding. In his determination, the arbitrator stated: "In our case, the grievants have simultaneously pursued an Article 78 suit *alleging violations of Education Law, Commissioner of Education Regulations and general abuse of power* and in the instant contract grievance arbitration *alleging violation of cited provisions of the agreement*". The arbitrator then emphasized that his opinion only addressed the issues arising from the collective bargaining agreement and not the issues before the court: "It is clear to me and should be understood by all

that I do not presume to pass upon those questions pending before the Court. *My jurisdiction is to interpret and apply the Agreement as written by the parties. My review of the Board's actions herein is by reference to the terms of that Agreement* and the facts on the record before me" (emphasis supplied). Likewise, the PERB hearing officer's decision was limited to a determination that "respondent's unilateral action of transferring the functions formerly performed by library media specialists to non-unit employees without the agreement of the charging party constitutes a violation of § 209-a.1(d) of the Act" and he ordered the board to negotiate in good faith with the East Ramapo Teachers Association. In short, it was clearly unnecessary for PERB or the arbitrator to decide the issue of whether a librarian II rendered teaching duties. The issues in these proceedings not being identical, a requisite element for issue preclusion was not present (*Capitol Tel. Co. v Pattersonville Tel. Co.,* 56 NY2d 11; *Julien J. Studley, Inc. v Lefrak,* 48 NY2d 954; *Schwartz v Public Administrator of County of Bronx,* 24 NY2d 65; *Brown v Lockwood,* 76 AD2d 721). Mollen, P. J., Titone, Weinstein and Rubin, JJ., concur.